**JOINT APPRENTICESHIP AND TRAINING COUNCIL OF LOCAL 363, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, and the United Construction Contractors Association, Plaintiffs,**

**and**

**John Rizzo & Joseph Rizzo, Plaintiff–Intervenors,**

**v.**

**NEW YORK STATE DEPARTMENT OF LABOR, Thomas M. Heins, John F. Hudacs, Donald J. Grabowski, and Robert Abrams, Attorney General of the State of New York, Defendants,**

**and**

**The Joint Industry Board of the Electrical Industry, Defendant–Intervenor.**

**No. 93 Civ. 2561 (JES).**

United States District Court, S.D. New York.

Feb. 3, 1994.

Horowitz & Pollack, P.C. (Jeffrey D. Pollack, Patrick Metz, of counsel), South Orange, NJ, for plaintiffs.

Cole & Cole (Patrick Metz, of counsel), Jersey City, NJ, for plaintiff-intervenors.

Robert Abrams, Atty. Gen., State of N.Y. (Jane Lauer Barker, M. Patricia Smith, Asst. Attys. Gen., of counsel), New York City, for State of New York.

McDonough, Marcus, Cohn & Tretter, P.C. (Steven I. Levin, Lorraine D'Angelo, of counsel), New York City, for defendant-intervenor.

## MEMORANDUM OPINION AND ORDER

SPRIZZO, District Judge.

In this action, plaintiffs Joint Apprenticeship and Training Council of Local 363

("JATC"), International Brotherhood of Teamsters, and the United Construction Contractors Association (collectively "JATC" or "plaintiffs") seek to enjoin defendants New York State Department of Labor ("NYSDOL"), Thomas M. Heins, John F. Hudacs, Donald J. Grabowski, and the Attorney General of the State of New York, Robert Abrams (collectively "NYSDOL" or "defendants") from effectuating a deactivation of plaintiffs' status as a registered apprenticeship training program ("ATP").

In a previous action brought by the JATC, the United States District Court for the Southern District of New York (Freeh, J.) granted summary judgment for the NYSDOL, rejecting the JATC's argument that Article 23 of the New York State Labor Law, § 810 et seq., which governs the registration and supervision of ATPs, was preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq. (1993). The Second Circuit subsequently affirmed. *Joint Apprenticeship & Training Council of Local 363 v. New York State Dep't of Labor*, 984 F.2d 589 (2d Cir.1993).

In the present action, plaintiffs present a different argument, contending that Article 23 of the Labor Law and the regulations promulgated thereunder unconstitutionally delegate legislative authority to private parties. Plaintiffs moved for a preliminary injunction, and defendants cross-moved for summary judgment. Since the Court concludes that the present action seeks to relitigate transactions considered in the earlier action *i.e.* the NYSDOL's right to deregister the JATC's ATP, on a different legal theory, defendants' motion for summary judgment must be granted.

## BACKGROUND

Because the facts underlying the instant litigation have been the subject of two previous opinions, this Court will set forth only those facts necessary to its discussion.

In 1937, recognizing the value of ATPs, Congress enacted the National Apprentice-ship Act, 29 U.S.C. § 50 et seq. (1937), commonly referred to as the Fitzgerald Act. Pursuant to such legislation and the regulations promulgated thereunder, the United States Secretary of Labor may recognize state apprenticeship agencies, which are empowered to administer and supervise local ATPs for state purposes. *See* 29 U.S.C. § 50 (1937); 29 C.F.R. §§ 29.1 et seq. (1992). In New York, ATPs have long been recognized as a means of training unskilled workers, and since the early 1960's, the NYSDOL has been recognized as a state apprenticeship agency. Grabowski Affidavit dated June 4, 1993 ("Grabowski Aff. of 6/4/93") ¶ 3–4. The voluntary registration of an ATP is governed by Article 23 of the New York State Labor Law and the regulations promulgated thereunder. *See* 12 NYCRR §§ 601 et seq.[1] If registration of an ATP is sought, a sponsor must meet certain minimum "standards" set forth in the statute and regulations, ensuring that the unskilled workers receive the necessary field and classroom training. *Id.;* Grabowski Aff. of 6/4/93 ¶ 6.

In the early 1960's, the JATC's ATP was originally registered with the NYSDOL. *Joint Apprenticeship & Training Council,* 984 F.2d at 592; Grabowski Aff. of 6/4/93 ¶ 10. In May of 1975, the NYSDOL, after notice and a hearing, ordered the program deregistered for its failure to conform to applicable apprenticeship standards. *Joint Apprenticeship & Training Council,* 984 F.2d at 592; Grabowski Aff. of 6/4/93. In the late 1970's, the JATC applied to the NYSDOL for re-registration of its ATP, and in 1981, they submitted proposed standards. *Joint Apprenticeship & Training Council,* 984 F.2d at 592; Grabowski Aff. of 6/4/93 ¶ 11. After extensive discussions between Mr. Thomas Carlough, director of the JATC, Mr. Donald J. Grabowski, director of employability development for the NYSDOL, and other NYSDOL officials, the proposed standards were reviewed, revised and accepted. Grabowski Aff. of 6/4/93 ¶ 11.

In 1982 and 1986, the NYSDOL received complaints regarding the operation of the

---

1. To encourage ATPs, the State accords certain financial advantages to registered ATPs, such as reimbursement of educational costs. Grabowski Aff. of 6/4/93 ¶ 3.

JATC's ATP, including its failure to maintain prescribed standards and its overall failure to achieve its fundamental purpose. *Joint Apprenticeship & Training Council,* 984 F.2d at 592; Grabowski Aff. of 6/4/93 ¶ 13 In both instances, the NYSDOL concluded, after investigation, that the evidence was insufficient to support the initiation of deregistration proceedings. *Joint Apprenticeship & Training Council,* 984 F.2d at 592; Grabowski Aff. of 6/4/93 ¶ 13.

Defendant intervenor Joint Industry Board of the Electrical Industry ("JIB"), an organization formed to assure the integrity of the electrical industry, is comprised of representatives of labor, management and the public. *Joint Apprenticeship & Training Council,* 984 F.2d at 592. In 1990, JIB filed a complaint with the NYSDOL regarding the operation of the JATC's ATP. *Id.;* Grabowski Aff. of 6/4/93 ¶ 14. The complaint alleged that the JATC's ATP should be deregistered for numerous reasons, including that the apprentices were not provided the required classroom or field training, and that the permitted ratio of journeymen to apprentices was consistently violated. *Joint Apprenticeship & Training Council,* 984 F.2d at 592; Grabowski Aff. of 6/4/93 ¶ 14. Based upon the complaint, the NYSDOL conducted an investigation and scheduled a deregistration hearing. *Joint Apprenticeship & Training Council,* 984 F.2d at 592; Grabowski Aff. of 6/4/93 ¶ 15.

On February 20, 1992, the JATC, along with other parties to the present action, commenced an action in the United States District Court for the Southern District of New York. They argued that Article 23 of the New York State Labor Law, § 810 *et seq.,* which governs the registration and supervision of ATPs, was preempted by ERISA. They sought a preliminary injunction to enjoin the scheduled deregistration hearing, but Judge Freeh denied their application. Instead, Judge Freeh granted defendants' motion for summary judgment holding that ERISA did not preempt the deregistration proceedings. The Second Circuit affirmed. *Joint Apprenticeship & Training Council of*

*Local 363 v. New York State Dep't of Labor,* 984 F.2d 589 (2d Cir.1993).

Thereafter, a number of deregistration hearings were held from late January through late March of 1993. Grabowski Aff. of 6/4/93 ¶ 16. On April 20, 1993, after the deregistration hearings were concluded, plaintiffs commenced the present action to enjoin the impending deregistration of the JATC's ATP. In a memorandum opinion and order, dated August 24, 1993, this Court denied plaintiffs' application for a preliminary injunction. *Joint Apprenticeship & Training Council of Local 363 v. New York State Department of Labor,* 829 F.Supp. 101 (S.D.N.Y.1993). On July 19, 1993, this Court permitted plaintiffs John Rizzo and Joseph Rizzo, members of the JATC's ATP, to intervene in this action.

According to plaintiffs, deregistration is improper because the NYSDOL's method of establishing standards constitutes an unconstitutional delegation of legislative authority to private parties under the unconstitutional delegation doctrine discussed extensively in *General Electric Co. v. New York State Dep't of Labor,* 936 F.2d 1448, 1454–59 (2d Cir. 1991). More specifically, plaintiffs allege that the NYSDOL, pursuant to the applicable regulations, would only approve standards which tracked those of the prevailing or largest apprenticeship program in the area.

## DISCUSSION

As in the earlier action, plaintiffs move for a preliminary injunction and defendants cross-move for summary judgment. On a motion for summary judgment, the moving party has the burden of demonstrating the absence of any genuine issue of material fact. *See Adickes v. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). It is well-established that a fact is material when its resolution would "affect the outcome of the suit under the governing law," and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). On the other hand, a party opposing a motion for summary judgment must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Rather they must enumerate "specific facts and circumstances supported by depositions, affidavits based on personal knowledge, and admissions," and cannot rely upon conclusory allegations or denials. *General Electric*, 936 F.2d at 1452.

■ With these standards in mind, this Court will address the principal argument put forth by defendants, *i.e.* that the instant action is barred by the earlier action under the doctrine of *res judicata*. Based upon considerations of judicial economy, the doctrine of *res judicata* was established to avoid superfluous litigation and to inject certainty into the legal system. *See Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). In the Second Circuit, the traditional formulation of the rule has been explained as follows:

> The general rule of *res judicata* is that a valid, final judgment, rendered on the merits, constitutes an absolute bar to a subsequent action between the same parties, or those in privity with them, upon the same claim or demand. It operates to bind the parties both as to issues actually litigated and determined in the first suit, and as to those grounds or issues which might have been, but were not, actually raised and decided in that action. The first judgment, when final and on the merits, thus puts an end to the whole cause of action.

*See Winters v. Lavine*, 574 F.2d 46, 57 (2d Cir.1978) (quoting *Saylor v. Lindsley*, 391 F.2d 965, 968 (2d Cir.1968); *see also Cromwell v. County of Sac*, 94 U.S. 351, 352, 24 L.Ed. 195 (1876); *Amalgamated Sugar Co. v.*

*NL Indus., Inc.*, 825 F.2d 634, 639 (2d Cir. 1987).

■ The earlier action, since it was disposed of by a grant of summary judgment, clearly constituted a judgment on the merits. Therefore, the only remaining issue is whether the present federal action and the one previously dismissed, and the factual nucleus underlying them, are identical. *See Expert Electric v. Levine*, 554 F.2d 1227, 1234 (2d Cir.1977). The Court concludes that, aside from the legal theories proffered as a basis to challenge the lawfulness of JATC's deregistration, both actions involve the deregistration of the JATC's ATP and implicate the same evidence. *See Sure–Snap Corp. v. State Street Bank & Trust Co.*, 948 F.2d 869, 874 (2d Cir.1991).

■ Plaintiffs contend, however, that *res judicata* is inapplicable because their present claims are allegedly predicated on the disclosure of new facts concerning the setting of standards by the NYSDOL, which only became discoverable shortly after the earlier litigation. However, the discovery of new evidence does not render the doctrine of *res judicata* inapplicable. *See Saud v. Bank of New York*, 929 F.2d 916, 920 (2d Cir.1991). It is only where the alleged newly discovered evidence was either fraudulently concealed or was not otherwise discoverable with due diligence that *res judicata* may not apply. *Id.* In this case, plaintiffs have set forth no colorable basis for their claim that they now have new facts that could not have previously been discovered with reasonable diligence.

Indeed, contrary to plaintiffs claims, plaintiffs had actual knowledge of the so-called new facts *i.e.* the NYSDOL's method of setting apprenticeship standards, for many years. Mr. Carlough, while involved in the registration of the JATC in 1981, was told that the JATC must use the apprenticeship standards employed by the largest program in the area. Carlough Dep. pp. 29–43. He was also told that the JATC must adopt that union's journeymen to apprentice ratio, and other job-related educational standards. *Id.* In fact, at a hearing attended by Mr. Car-

lough and counsel for the JATC in 1989, Mr. Grabowski testified that "the largest program in the area which has an established apprentice training ratio is the program that sets the ratio for that particular area." Affidavit of Donald J. Grabowski dated July 21, 1993 ("Grabowski Aff. of 7/21/93") ¶ 27. Moreover, as far back as September 4, 1991, Mr. Carlough himself wrote that the NYS-DOL "has never established a ratio that is not in conformity with the collective bargaining agreement of the prevailing union in the area." Letter from Carlough to Green of 9/4/91.

In any event, plaintiff has made no showing of concealment or due diligence. The fact that defendants' objected to certain interrogatory requests concerning the process by which electrical apprenticeship program standards are established, and made allegedly unsatisfactory answers thereto is irrelevant. These requests were not made until almost six months after the earlier litigation was concluded, and no colorable reason has been offered as to why they could not in the exercise of reasonable diligence have been made earlier. Moreover, defendants' response clearly indicated that the largest area programs usually set the prevailing ratios (Letter from Grabowski to Griffin of 3/16/88), and thus hardly supports plaintiffs claims of concealment. Moreover, since 1981, not only have the statute and regulations governing the approval of apprenticeship programs and their standards remained constant but the information now relied upon by plaintiffs as "newly discovered" has remained a matter of public record subject to disclosure pursuant to the State Freedom of Information Act.

Thus, it is clear that the claims of the named plaintiffs, who were parties to the earlier action, are clearly barred by *res judicata. Matthews v. New York Racing Ass'n, Inc.,* 193 F.Supp. 293, 294 (S.D.N.Y.1961). All that remains to be determined therefore is whether the intervening plaintiffs, who were not parties to the earlier action but who are members of JATC, are likewise barred.

■ The doctrine of privity, which extends the preclusive effects of an earlier judgment to nonparties who are in privity with the parties to the earlier action, must be applied with flexibility. *See Amalgamated Sugar Co. v. NL Indus.,* 825 F.2d 634, 640 (2d Cir.1987). Privity simply represents a legal conclusion that the relationship between parties is sufficiently close, so as to warrant preclusion. *See Index Fund, Inc. v. Hagopian,* 677 F.Supp. 710, 715 (S.D.N.Y.1987). Thus, although not formally a party to a litigation, a party "whose interests were adequately represented by another vested with the authority of representation is bound by the judgment." *Expert Electric,* 554 F.2d at 1233.

In *Expert Electric,* which arose out of the NYSDOL's deregistration of the JATC's ATP in 1976, employer members of the United Construction Contractors Association ("United"), one of the joint sponsors of the JATC, brought an action in the Southern District of New York, seeking to litigate the deregistration of the program. *Expert Electric,* 554 F.2d at 1231. While that action was pending United itself brought an Article 78 proceeding in the New York State Supreme Court, Appellate Division, seeking to litigate the same issue. *Id.* While the federal action was stayed pending the outcome of the state proceedings, the Appellate Division affirmed the order of deregistration. *In the Matter of United Construction Contractors Ass'n, Inc. v. Levine,* 52 A.D.2d 371, 384 N.Y.S.2d 509 (3d Dep't 1976). Thereafter, the district court dismissed the employer members' federal action on the grounds of *res judicata. Expert Electric,* 554 F.2d at 1232.

■ On appeal, the Second Circuit acknowledged that, as the sponsor of the ATP, the JATC "is recognized as the single representative of *all participants." Id.* at 1233 (emphasis added). As a result, the Court concluded that privity existed between United, a joint sponsor of the JATC, and its member employers, and that therefore federal action was barred by *res judicata. Id.* at 1236. The analysis in *Expert Electric,* and the conclusion reached therein, is equally applicable here. Since the party litigating the prior action was the representative of the

present intervening plaintiffs, there is sufficient privity between the parties to render the previous judgment binding on them as members of JATC as well.

 Nor does the fact that pursuant to the New York Code of Rules and Regulations, each apprentice who participates in a New York State registered ATP must be individually registered in such program, *see* 12 NYCRR §§ 601.3(c), 601.5(c), 601.6; Affidavit of Donald J. Grabowski dated September 30, 1993 ("Grabowski Aff. of 9/30/93") ¶ 4, require a different result.[2] The individual registration referred to above is merely an agreement, reviewed by the State for its accuracy, which sets forth the responsibilities between the ATP and the apprentice. *Id.* ¶ 4–5. That agreement is recorded by the State for purely statistical purposes. *Id.* ¶ 5. For example, each apprentice is individually registered by name, social security number, and other personal characteristics, and records of progress are continually filed with the State's central office. Grabowski Dep. p. 24. However, apprentices cannot be registered with the State in an individual capacity, and their rights derive solely from their participation in the apprenticeship program. *Id.* ¶ 6.

Since this Court concludes that the intervening plaintiffs in this action stand in privity with the unsuccessful plaintiffs in the earlier action,[3] the present action, which arises out of the same operative facts as the one previously dismissed, is barred. *See Commissioner of Internal Revenue v. Sunnen,* 333 U.S. 591, 598, 68 S.Ct. 715, 719–20, 92 L.Ed. 898 (1948). Accordingly, plaintiff and plaintiff-intervenors' motion for a preliminary injunction is denied, and defendants' and defendant-intervenor's motion for summary judgment shall be and hereby is granted. The Clerk of the Court is directed to enter appropriate judgment for the defendants and defendant-intervenor and close the above-captioned action.

It is **SO ORDERED.**

---

2. The fact that if deregistration occurred, NYS-DOL would attempt to place the displaced apprentices in other registered programs is of no consequence. Affidavit of Donald J. Grabowski dated August 2, 1993 ¶ 13. The fact that the State, as a matter of grace, would try to assist apprentices in this fashion has no impact on the privity that exists between the JATC and its members.

3. It should also be noted that in the stipulation and order permitting intervention by John Rizzo and Joseph Rizzo, the intervenors and JATC both agreed that their interests were identical and implicated the same issues.