**Thomas THURMAN, D.C., Appellant,**

v.

**CITY OF LAKE ST. LOUIS, a Municipal Corporation; John Selby, Chief of Police; and Ron Nelson, City Administrator, Appellees.**

No. 93–3701.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1994.

Decided May 11, 1994.

Rehearing and Suggestion for Rehearing En Banc Denied June 22, 1994.

Scott E. Walter, Clayton, MO, for appellant.

Joy R. Urbom, St. Louis, MO, for City of Lake St. Louis.

Ron Nelson, Ben Ely, Jr. and Gary Wiseman, St. Louis, MO, for Selby.

Before RICHARD S. ARNOLD, Chief Judge, HENLEY, Senior Circuit Judge, and MAGILL, Circuit Judge.

RICHARD S. ARNOLD, Chief Judge.

Thomas Thurman filed this action alleging a violation of his constitutional rights under 42 U.S.C. § 1983, as well as several state causes of action. The defendants, the City of Lake St. Louis, Missouri, former Lake St. Louis Chief of Police John Selby, and City Administrator Ron Nelson, filed a motion for summary judgment. Thurman alleges that the defendants violated his constitutional rights when they demanded payment of debts owed by Safeguard Security Services, Inc., a corporation of which Thurman was an officer, a shareholder, and a creditor. Thurman claimed that the defendants' actions resulted in the corporation's closing, which, in turn, deprived him of his investment and the opportunity to obtain repayment of corporate debts owed him by Safeguard. The District Court[1] granted summary judgment for the defendants on the Section 1983 claim and dismissed all of the plaintiff's state-law claims with prejudice. It held that the plaintiff's claims were barred by a release entered into by the corporation and others settling a prior suit on the same facts. We affirm.

I.

Thurman claims that on or about October 9, 1986, defendant Selby came to Safeguard's offices and demanded that an officer of Safeguard appear at the Lake St. Louis Police Department. When that person appeared, the police demanded payment of some of Safeguard's corporate debts, and demanded that the sums of $10,176.00 and $2,000.00 be delivered to the station before October 10, 1986. Thurman allegedly borrowed this money and made it available to the police department; defendant Nelson then deposited the money in escrow with the City. Thurman also alleges that the defendants demanded he pay an additional $15,000.00 to various creditors, and he did so. Finally, Thurman claims that on October 10, 1986, the defendants took Safeguard's merchant's license away, closed the corporation, ordered the employees to cease business activities, and refused to reissue the license. According to the plaintiff, these acts deprived him of property without due process of law, and the closing of Safeguard prevented him from collecting $100,000.00 in loans due him as one of Safeguard's major creditors and investors.

In response, the defendants argued that Thurman's suit was barred by a release signed by Karen Clark, the president of Safeguard. Safeguard and Clark had sued the same defendants in two earlier suits, alleging, for the most part, the same claims.

---

1. The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

The earlier suits ended in a settlement which included a "release and covenant not to sue." The release and covenant not to sue barred

> any and all actions, causes of action, claims, demands and damages, whether or not now known or contemplated, of whatever name or nature, in any manner arisen, arising or to arise from any and all actions of the persons released with regard to Karen Clark, Phillip Clark and Lake St. Louis Safeguard Security Services, Inc. in October, 1986 and at any time before or after through April 15, 1991 [sic].

This agreement released John Selby, Ronald Gann, the City of Lake St. Louis, and any and all of its officers and employees. Karen Clark and Phillip Clark signed the release in their personal capacities, and Karen Clark signed the release on behalf of Safeguard Security Services, Inc. Although Thurman did not sign the release, in his capacity as a director he approved settlement of the lawsuit, and he signed a resolution authorizing Karen Clark, as President of Safeguard, to act on behalf of the company in reaching a settlement. His signature appears below Karen Clark's on a written copy of this resolution. Pursuant to this power, Karen Clark proceeded to settle the lawsuit for $140,-000.00.

Thurman received a portion of the $140,-000.00, but he did not receive all he felt he was owed as a creditor of Safeguard. He filed this suit in an attempt to force the defendants to pay him more money. The District Court granted summary judgment for the defendants, holding that Thurman did not have an individual cause of action, and that any claims he might have had as an officer or creditor of Safeguard were barred by the covenant not to sue Clark signed on Safeguard's behalf.

## II.

Thurman's claims are barred by the Release and Covenant Not to Sue executed in May of 1991 by Karen Clark. Thurman was an officer of the corporation and was present at the meeting when the Directors agreed to confer the power to settle the initial suit on Clark. Moreover, he signed the resolution conferring this power on Clark. Under the particular circumstances of this case, Thurman bound himself to the settlement she negotiated. *Qui facit per aliam facit per se.* Furthermore, any claims Thurman might want to raise as a shareholder are also barred by the corporation's release of claims. See *Bernstein v. Mediobanca Banca di Credito Finanziario–Società per Azioni,* 78 F.R.D. 1, 5 (S.D.N.Y.1978).

Thurman asserts that he raises the claims in this case in his individual capacity, and that he has the power to do so, because he was not a party to the release. In making this claim, he does not allege that the release was invalid, or that the signature on the form was not his. Instead, he argues the release should bind only the corporation, and not him as an individual. However, Thurman was an officer of Safeguard and any money he made available for payment to the defendants, he made available on behalf of Safeguard. He has pointed to no facts in the record to the contrary, and, when deposed, he stated that he gave the money to others to satisfy Safeguard's obligations. Thurmond was in privity with the corporation when it signed the release. His claims as an officer and shareholder are derivative of the corporation's claim, and the same is true of his claim as a creditor. He was a corporate insider. His decision to characterize some of his investment as debt rather than equity should not enable him to authorize and bring duplicative lawsuits for what is essentially the same wrong. See *Schmitt–Norton Ford, Inc. v. Ford Motor Co.,* 524 F.Supp. 1099, 1106 (D.Minn.1981), *aff'd mem.,* 685 F.2d 438 (8th Cir.1982).

We conclude that Thurman is bound by the terms of the release, which prohibits this suit. Therefore, we hold that the District Court properly granted summary judgment for the defendants and dismissed plaintiff's claims with prejudice.

Affirmed.