OPINION OF THE COURT
Jasen, J.
The question presented for our determination on this appeal is whether the Mayor of the City of New York may vote as a member of the Board of Estimate of the City of New York when that body considers budget modifications made by the *693 Mayor pursuant to subdivision b of section 124 of the New York City Charter.
In this declaratory judgment action, plaintiffs, the president of the New York City Council and the presidents of each of the five Boroughs of the City of New York, all of whom are members of the Board of Estimate, seek a judgment declaring that defendant, the Mayor of the City of New York, also a member of the board, may not vote during the board’s consideration of budget modifications proposed by the Mayor and an injunction preventing him from doing so. Plaintiffs contend that subdivision d of section 120 of the New York City Charter which provides that "[t]he mayor shall not participate in any action or vote of the board of estimate on the budget” prevents the Mayor from voting on any matter which relates to the approval of the budget in any way. Defendant concedes that he has no power to vote upon the approval of the original budget, but contends that this limitation does not extend to his power to vote upon proposed modifications to the previously adopted budget. He points out that his power to vote on budget modifications is limited only in three specific instances enumerated in subdivision f of section 124 of the charter, which incorporates by reference the language of section 120, and argues that as to a modification undertaken pursuant to subdivision b of section 124, his power to vote is unimpeded.
Special Term noted that because the charter was adopted by popular vote, it must be construed by seeking "the meaning which the words would convey to an intelligent, careful voter.” (Matter of Kuhn v Curran, 294 NY 207, 217; see, also, Matter of City of New York v Beame, 37 AD2d 89, 92.) The court found that "the intelligent, careful voter examining the charter and explanatory data made available to him would be led to the reasonable belief that, the Charter excluded the Mayor’s participation from any Board of Estimate vote on the budget” and granted summary judgment in favor of plaintiffs.
The Appellate Division reversed and granted summary judgment to defendant. The court reasoned that the limitation on the Mayor’s power to vote embodied in subdivision d of section 120 of the New York City Charter applies only to submission and approval of the budget, which is but one part of the budgetary process, and that an "intelligent, careful voter” would have thought that subdivision d of section 120 should apply only to such budget approval and to those other sections of the charter which specifically incorporate it by reference. *694 We now affirm, but employ an analysis different from that utilized by the Appellate Division.
Both of the courts below reasoned that the charter’s approval by public referendum requires that a court, in construing that document, seek the meaning that the words of the charter would convey to the "intelligent, careful voter”. (Matter of Kuhn v Curran, 294 NY 207, 217, supra.) In our view, the time has come to abandon this standard of analysis in favor of a more realistic approach. While the concept that publicly approved provisions of law must be construed by seeking the intent of the electors approving them has surface appeal, when one considers the documents by which voters are apprised of constitutional or charter amendments, the places at which they are made available, and the time normally required to peruse, much less digest, the content of such materials, it is clear that so few voters do what the "intelligent, careful voter” rule assumes they do that this standard has become little more than an empty legal fiction. We see no reason why the courts of this State should be required to continue to employ such a standard. Therefore, we now hold that publicly approved provisions of law should be interpreted by applying the traditionally accepted standards of statutory construction.
These standards require that the charter be read as a whole (McKinney’s Cons Laws of NY, Book 1, Statutes, § 97) and that each word in the charter be considered in arriving at its meaning (McKinney’s Cons Laws of NY, Book 1, Statutes, § 231). Applying these standards, we conclude that the restriction upon the Mayor’s voting power in subdivision d of section 120 of the revised charter should be limited to the approval of the original budget. To read that section as applying to subsequent budget modifications undertaken pursuant to subdivision b of section 124 would render the specific incorporation of section 120 in a selected few of the modification provisions in subdivision f of section 124 meaningless. Moreover, it has long been held that where a statute describes the particular situations in which it is to apply, "an irrefutable inference must be drawn that what is omitted or not included was intended to be omitted or excluded.” (McKinney’s Cons Laws of NY, Book 1, Statutes, § 240; see, also, Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York, 41 NY2d 205, 208-209.) Thus, we hold that the Mayor’s power to *695 vote upon budget modifications is limited only in the specific instances delineated in subdivision f of section 124.
Accordingly, the order of the Appellate Division should be affirmed, without costs.